UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FARM LABOR ORGANIZING COMMITTEE,

           Plaintiff,

   v.

U.S. DEPARTMENT OF LABOR,

           Defendant.

Case No. 20-cv-645 (JMC)

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Farm Labor Organizing Committee (FLOC) filed a Freedom of Information Act (FOIA) request with Defendant U.S. Department of Labor (DOL), seeking records that reveal the companies certain farmers sell tobacco to. *See* ECF 23 at 35 ¶ 4.[1] DOL produced responsive records but withheld some of the information FLOC sought under Exemption 4 of FOIA. *See* ECF 23 at 44 ¶ 21. Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The Parties dispute whether those withholdings are proper, and cross-move for summary judgment on that issue. *See* ECF 22; ECF 23.

    FLOC has identified certain information that is already in the public domain. The Court will **GRANT** FLOC's motion for summary judgment (and **DENY** DOL's motion for summary judgment) as to that information and order DOL to disclose it. For the reasons explained below,

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

the Court will otherwise **DENY WITHOUT PREJUDICE** both Parties' motions for summary judgment and issue an order for further proceedings.

I.     BACKGROUND

The following facts are undisputed except where noted. FLOC, a labor union that represents agricultural workers, filed a FOIA request with DOL requesting the following records:

> [T]he final findings of any US DOL investigation that resulted in a determination of a violation of any federal law or regulation in which US DOL determined as part of any such investigation that the specific farmer, agricultural employer, and/or farm labor contractor sold tobacco to the RJ Reynolds Tobacco Company, Universal Leaf Corporation, Altria, or Alliance One International. This request is limited to the states of North Carolina, Kentucky, Tennessee, and Virginia and the time frame sought is for any such investigation that was conducted in 2015, 2016, or 2017.

ECF 1 ¶ 3; ECF 23 at 35 ¶ 4.

First, some background on DOL's investigations. Agricultural workers are protected by federal laws regulating their working conditions. *Id.* at 33–34 ¶ 1. DOL's Wage and Hour Division (WHD) conducts investigations to determine whether agricultural employers (who the Court will refer to, for ease of reference, as "Growers") are in compliance with those laws. *Id.* at 34 ¶ 2. In the course of those investigations, WHD may ask Growers who they sell their products to. *Id.* at 34 ¶ 3. Investigators memorialize their findings and conclusions in narrative reports. *Id.* at 34 ¶ 2.

DOL produced 1,178 pages of records responsive to FLOC's FOIA request, withholding certain information pursuant to FOIA Exemptions 4, 5, 7(C), 7(D), and 7(E). *Id.* at 36 ¶¶ 7, 8. DOL provisionally redacted some information under Exemption 4, which protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential," 5 U.S.C. § 552(b)(4), because "WHD was in the process of obtaining input from submitters of such information pursuant to Executive Order 12,600," *id.* at 36 ¶ 8. Executive Order 12,600 requires agencies to "establish procedures to notify submitters of records containing confidential

commercial information . . . when those records are requested under the Freedom of Information Act." Exec. Order No. 12,600, 52 Fed. Reg. 23781 (June 23, 1987). As part of that process, DOL sent letters to 76 Growers and 20 tobacco companies (who the Court will refer to as "Buyers") identified in the responsive documents, providing them an opportunity to object to the disclosure of their information. ECF 23 at 39–40 ¶¶ 14–15. The letters stated that, if the recipient failed to respond by a certain date, DOL would release the information. *Id.* DOL received responses from eight Growers, who provided letters to the agency objecting to the release of certain information—including their Buyers' identities—and asserting that they hold that information as confidential. *Id.* at 41 ¶ 16; *see* ECF 22 at 64–85.

DOL also received responses from four Buyers, contending that information about who they buy tobacco from is confidential, commercial information and objecting to its disclosure. *See* ECF 23 at 44 ¶ 21; *see* ECF 22 at 87–115. After receiving these responses, DOL conducted an "independent assessment": the agency "reviewed publicly available information, including any available websites, to determine whether any of the withheld information was already available in the public domain"; considered "the fact that tobacco contracts between many [Growers] and tobacco purchasers include confidentiality clauses that prohibit them from disclosing the identity of their tobacco customers"; and took into account "representations that the tobacco industry is [] highly competitive." ECF 23 at 42–44 ¶¶ 18–20. As a result, DOL withheld under Exemption 4, "references relating to any crop buyers from the investigations of the eight [Growers] who objected to the disclosure of such information," and any references to the four objecting Buyers and their affiliates: Alliance One, China Tobacco International North America (CTINA), R.J. Reynolds Tobacco Company, and Universal Leaf. *See id.* at 44 ¶ 21; ECF 23 at 16.

3

The Parties cross-moved for summary judgment. ECF 22; ECF 23. Their sole dispute is whether DOL properly withheld information about who Growers sell tobacco to under Exemption 4. *See* ECF 22 at 16; ECF 23 at 7.

## II.   LEGAL STANDARD

### A. Summary Judgment

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court will grant a motion for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences" in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "When parties file cross-motions for summary judgment, each motion is viewed separately, in the light most favorable to the non-moving party, with the court determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Howard Town Ctr. Dev., LLC v. Howard Univ.*, 267 F. Supp. 3d 229, 236 (D.D.C. 2017).

In FOIA cases, it is the defending agency's burden to prove it has complied with its obligations under the statute. *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). To satisfy that burden, the "agency must prove that each document that falls within the class requested either has been produced, is unidentifiable[,] or is wholly exempt from the Act's inspection requirements." *Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980). A court may rely on the agency's "relatively detailed and non-conclusory" affidavits or declarations to resolve a FOIA case, *SafeCard Servs.,*

*Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), if they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

B. **Exemption 4**

The sole issue in this case is whether DOL properly withheld the names of tobacco Buyers pursuant to FOIA Exemption 4. Under Exemption 4, the agency need not produce "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). "When an agency withholds non-trade-secret information under Exemption 4, it must demonstrate that the withheld information is '(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential.'" *Citizens for Resp. & Ethics in Washington v. DOJ*, 58 F.4th 1255, 1262 (D.C. Cir. 2023) ("*CREW*") (quoting *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)). The key dispute in this case is the third element: whether the information is "confidential."

In *Food Marketing Institute v. Argus Leader Media*, 588 U.S. 427 (2019) ("*Argus Leader*"), the Supreme Court considered two conditions that might be required for information to be deemed confidential under Exemption 4: (1) that the information is "customarily kept private, or at least closely held, by the person imparting it," and (2) that "the party receiving [the information] provides some assurance that it will remain secret." *See CREW*, 58 F.4th at 1269; *Argus Leader*, 588 U.S. at 434. The Court held that the first condition must be met for information to be considered confidential, remarking that "it is hard to see how information could be deemed confidential if its owner shares it freely." *Argus Leader*, 588 U.S. at 434. In determining whether

5

a party customarily keeps certain information private, "the court will consider how the particular party customarily treats the information, not how the industry as a whole treats the information." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 148 (D.C. Cir. 2001).

The *Argus Leader* Court did not decide whether the second condition—that "the party receiving [the information] provide[] some assurance that it will remain secret"—is also necessary to establish that information is confidential. 588 U.S. at 434. The D.C. Circuit has likewise declined to resolve that question. *CREW*, 58 F.4th at 1269. Post-*Argus Leader*, multiple courts in this District have found that assurances of privacy are not required but can be relevant to the confidentiality analysis. *See Energy Policy Advocates v. SEC*, No. 23-cv-507, 2024 WL 4512386, at *4 (D.D.C. Oct. 17, 2024); *Naumes v. Dep't of the Army*, 588 F. Supp. 3d 23, 40 (D.D.C. 2022); *Ctr. for Med. Progress v. United States Dep't of Health & Hum. Servs.*, No. 21-cv-642, 2022 WL 4016617, at *8 (D.D.C. Sept. 3, 2022); *Renewable Fuels Association v. EPA*, No. 18-cv-2031, 2021 WL 602913, at *11–13 (D.D.C. Feb. 16, 2021); *Stotter v. United States Agency for Int'l Dev.*, No. 14-cv-2156, 2020 WL 5878033, at *5 (D.D.C. Oct. 3, 2020).

### C. Foreseeable Harm

Even if a record meets Exemption 4's requirements, the agency may only withhold the information if it "reasonably foresees that disclosure would harm an interest protected by" the exemption. 5 U.S.C. § 552(a)(8)(A). The agency must "articulate both the nature of the harm from release and the link between the specified harm and specific information contained in the material withheld." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021). "[F]ew courts have considered what burden the foreseeable-harm requirement imposes on agencies that seek to withhold records pursuant to Exemption 4." *Shteynlyuger v. Centers for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 123 (D.D.C. 2023). Those that have opined on the issue have

said that an agency "must explain how disclosing, in whole or in part, the specific information withheld under Exemption 4 would harm an interest protected by this exemption, such as by causing genuine harm to [the submitter's] economic or business interests." *WP Co. LLC v. U.S. Small Bus. Admin.*, 575 F. Supp. 3d 114, 119 (D.D.C. 2021) (quoting *Ctr. for Investigative Reporting v. U.S. Customs and Border Protection*, 436 F. Supp. 3d 90, 113 (D.D.C. 2019)).

### III. ANALYSIS

The Court understands DOL to be making two alternative arguments for why its Exemption 4 withholdings are proper. DOL's first theory is that the agency properly withheld Buyers' names under Exemption 4 because Growers treat that information as confidential and would be foreseeably harmed by its disclosure. And DOL's second theory is that, even if the record does not establish how the Growers treat this information, the agency should win because the *Buyers* treat that information as confidential. *See generally* ECF 22; ECF 25.

On the record before the Court, DOL cannot prevail on its first theory. First, there are eight Growers who objected to disclosure via letter. Because the agency has submitted no non-hearsay evidence about these Growers, the Court cannot find that they treat the identities of their Buyers as confidential. Second, there are five Growers who filed affidavits in this litigation objecting to disclosure. But those affidavits say nothing about whether the Growers would be harmed by disclosure—and nothing else in the record establishes foreseeable harm. Third, the remaining Growers did not respond to the agency, and did not submit any information stating whether they treat this information as confidential. The record does reflect that some of these Growers (those who sell to R.J. Reynolds, Universal Leaf, or CTINA) are bound by contract to treat those Buyers' identities as confidential. But again, there is no competent evidence to establish that those Growers would be foreseeably harmed by disclosure. And there is no information in the record at all about

whether Growers who contract with Alliance One treat that relationship as confidential or would be harmed by disclosure. Thus, looking only to how Growers treat the information in question, DOL has not discharged its burden to demonstrate that the withheld information properly falls under Exemption 4.

That brings the Court to DOL's alternative argument: that their Exemption 4 withholdings are justified because the Buyers treat this information as confidential and would be foreseeably harmed by its disclosure. FLOC argues that, in determining whether information is "confidential" for Exemption 4 purposes, courts should look only to how the party who submitted that information to the government (here, the Grower) treats it. *See* ECF 23 at 16–17. DOL seems to contend that the court can consider whether any owner of the information (here, either the Grower or the Buyer) treats it as confidential, regardless of whether that owner was the party who submitted the information in question to the government. *See* ECF 25 at 18–19. Because the Parties have not identified any case that squarely confronts that issue and it receives only limited attention in the Parties' briefs, the Court declines to resolve that question today. Instead, the Court will deny each Parties' cross-motion for summary judgment without prejudice to refiling, and will invite the Parties to meet, confer, and set a schedule for renewed briefing that directly addresses this issue if the Parties do not otherwise reach agreement on the remaining records.

In the meantime, however, FLOC has identified one piece of information that is in the public domain: the fact that Strickland Farms sold tobacco to Alliance One in 2016. If DOL has withheld that information, it must disclose it. The Court will therefore grant FLOC's motion for summary judgment (and deny DOL's motion for summary judgment) as to that withholding.

**A. DOL Does Not Prevail on its First Theory**

DOL contends that its Exemption 4 withholdings were proper because the Growers treat their Buyers' identities as confidential and would be foreseeably harmed if that information were disclosed. DOL has not produced competent record evidence such that it is entitled to summary judgment on this ground.

**a. Growers Who Objected via Letter**

Eight Growers submitted letters to the agency objecting to the disclosure of their Buyers' identities, stating that they hold this information as confidential and would be harmed by its release.[2] *See* ECF 22 at 64–85. FLOC argues that these letters are hearsay because they are unsworn, out-of-court statements offered for the truth of the matter asserted. ECF 23 at 13–14; *see* Fed. R. Evid. 801(c). Generally, hearsay "counts for nothing on summary judgment." *See Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007). In FOIA cases, courts may consider hearsay when assessing the adequacy of an agency's search, and agency declarants can rely on information obtained through inter-agency consultation. *See Humane Soc'y of United States v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019); *DiBacco v. Dep't of the Army*, 926 F.3d 827, 833 (D.C. Cir. 2019) (explaining that FOIA declarations can include information relayed to an agency employee by her subordinates "without running afoul of Rule 56"). Neither exception applies to these letters: FLOC does not challenge the adequacy of the agency's search, and the letters were obtained from third parties, not through inter-agency consultation. Courts in this District and beyond have therefore declined to "rely on out-of-court statements from private third-parties to justify an agency's withholding" in FOIA cases. *Humane Soc'y of United States*,

---

[2] Those eight Growers are: Carroll Coffman, Dennis J. Burnett, Doug Dunaway, Brian Forsee of Maple Heights Farm, William Austin Newton, Steve Hamilton, Bruce Wade of Wade Farms Labor Management, LLC, and Wellington Bacon, Jr. *See* ECF 22 at 64–85.

386 F. Supp. 3d at 44; *see Pub. Citizen v. U.S. Dep't of Agric.*, No. 21-cv-1408, 2022 WL 3139003, at *2 (D.D.C. Aug. 5, 2022) (collecting cases); *Leopold v. United States Dep't of Just.*, No. 19-cv-3192, 2021 WL 124489, *5–6 (D.D.C. Jan. 13, 2021) (declining to rely on unsworn third-party letters because "[e]ach letter is a statement made out of court and the government has not established the applicability of any hearsay exception"); *Brown v. Perez*, 835 F.3d 1223, 1231–33 (10th Cir. 2016) (declining to consider third-party letters in assessing Exemption 4 argument because those letters were hearsay). Absent an exception, the Growers' letters are inadmissible hearsay.

DOL argues that the letters are admissible because "they consist of objections by the various submitters," and those objections "are relevant because they exist, *i.e.*, the various submitters object for the reasons articulated." ECF 25 at 13. The Court understands DOL to be arguing that the letters are admissible not for their truth (i.e. that the Growers in fact treat this information as confidential), but for the effect on the listener (i.e. that the Growers' objections led the agency to believe that this information fell within Exemption 4). *See* Mar. 14, 2023 Hr'g Tr. 15:21–16:2 (government counsel making this argument). Fair enough—but that does not get DOL where it needs to go. The question for the Court is not whether DOL had some good-faith or reasonable basis to withhold this information under Exemption 4 (which unsworn third party objections might well provide). The question is whether these Growers in fact treat their Buyers' identities as confidential and would be foreseeably harmed if that information were disclosed. *See Humane Soc'y of United States*, 386 F. Supp. 3d at 44. So, even accepting that the Growers' letters

10

are admissible for the effect they had on agency employees rather than for the truth, that effect is ultimately "irrelevant" to the Court's Exemption 4 inquiry. *Id.* at 45.[3]

Next, DOL argues that even if the letters are themselves inadmissible, the Court can rely on the declaration of Patrice Torres, Associate Administrator for Administrative Operations for the Wage and Hour Division, which describes the letters. *See* ECF 25 at 11–12. Citing to the Growers' letters, Torres states that "WHD received responses from eight [Growers] who asserted that information relating to their crops' buyers is confidential, commercial information that they do not disclose to the public." ECF 22 at 45 ¶ 18. This does not cure the agency's hearsay problem. To be considered on summary judgment, a declaration must "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). The Growers' assertions that they treat their Buyers' identities as confidential are still unsworn out-of-court statements, even when regurgitated in an agency declaration.

DOL counters that Torres can rely on the letters because they "were obtained within the course of her official duties." ECF 25 at 13. That is true as to Rule 56's requirement that "[a]n affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). In FOIA cases, agency declarants are said to have "personal knowledge" of information they obtain in the course of their official duties. *Hainey v. U.S. Dep't of the Interior*, 925 F. Supp. 2d 34, 41 (D.D.C. 2013). But the problem here is not whether Torres has personal knowledge of these eight Growers' practices. The problem is that she

---

[3] DOL makes passing reference to the residual hearsay exception, which provides that a hearsay statement that does not fall under any other exception is admissible if it "is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement," and "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a); *see* ECF 25 at 10. But DOL offers no argument on how the letters fall into this exception. In particular, it is not clear how the letters are "more probative . . . than any other evidence that the proponent can obtain through reasonable efforts," given that the agency is in contact with these eight Growers and could therefore presumably request declarations or other admissible evidence from them. Fed. R. Evid. 807(a)(2).

communicates that information to the Court via an inadmissible hearsay statement—and DOL has not identified any exception under which those statements fall or explained how this information could be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see Humane Soc'y of United States*, 386 F. Supp. 3d at 43–44 (declining to consider certain "second-hand, unsubstantiated accounts in the [agency]'s declaration" because they were inadmissible hearsay).

In sum, the Court cannot agree with DOL that either the Growers' letters or the Torres Declaration establish that the eight objecting Growers treat their Buyers' identities as confidential.

### b. Growers Who Filed Declarations

Five Growers submitted declarations in this lawsuit averring that they each "hold[] as confidential and private—and, as a matter of course, do[] not disclose—the identities of [their] buyers," and that DOL investigators "assured [them] that the Department of Labor would hold that information about the[ir] buyers of tobacco leaf as confidential and not disclose such information to any third party."[4] ECF 25-1 at 3, 6, 9, 12, 15. But an agency may withhold records under Exemption 4 only if it "reasonably foresees that disclosure would harm an interest protected by" that exemption. 5 U.S.C. § 552(a)(8)(A). The five Grower declarations say nothing about whether and how the Growers would be harmed by disclosure. *See* ECF 25-1 at 2–16.

Instead, the agency relies on the Torres Declaration to support its foreseeable harm argument. *See* ECF 22 at 36. The Torres Declaration states:

> WHD also considered representations that tobacco contracts between many [Growers] and [Buyers] include confidentiality clauses that prohibit them from disclosing the identity of their tobacco customers. Revealing this information[] could harm their ability to obtain future contracts from their currents clients and result in poaching of their current clients by other [Growers]. Even in the

---

[4] Those Farmers are: Andy Clapp of A&M Clapp Farm, Tyler Durham of Durham Brothers Farms, LLC, Jim Jennings of J.F. Leaf, Patrick Edwards of Patrick Edwards Farms, LLC, and Fred Hart of Hartland, Inc. ECF 25-1 at 2–16.

12

>           absence of a confidentiality provision, disclosure of a[] [Grower's]
>           tobacco purchaser would put the [Grower] at a competitive
>           disadvantage with other [Growers].

ECF 22 at 45–46 ¶ 21. Although FOIA cases can often be resolved by looking to agency affidavits, those affidavits must "contain reasonable specificity of detail rather than merely conclusory statements." *Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 734–35 (D.C. Cir. 2017). And "conclusory statements . . . by an agency official about what the agency official may believe about how a submitter customarily treats the information at issue are simply insufficient" to survive summary judgment. *Ctr. for Med. Progress*, 2022 WL 4016617, at *10. Here, it is not clear how the second and third sentences of Torres' statement follow from the first. The agency "considered representations" that many Buyers and Growers have confidentiality clauses in their contracts. But how did the agency conclude, based on the existence of those confidentiality clauses alone, that disclosing this information would lead to these particular harms for Growers (difficulty obtaining future contracts from their current clients, and having their current clients poached)? Did the agency just assume that would be the case, or did they come to that conclusion based on some information that is absent from the declaration?[5] The Court must be able to find that the agency "reasonably" foresaw that disclosure would harm Growers, but absent any connective tissue between the first and second sentences of this statement, the Court cannot find that the agency's conclusion here was reasonable. *See* 5 U.S.C. § 552(a)(8)(A). Viewing the evidence in the light most favorable to FLOC, as the Court must, the Court cannot find foreseeable harm based on the Torres Declaration alone.

---

[5] It is even harder to understand how the agency concluded, based on the existence of these confidentiality provisions, that those Growers *not* bound by confidentiality agreements would be foreseeably harmed by disclosure.

13

### c. Non-Objecting Growers

The remaining Growers did not respond to the agency's letter and did not themselves provide any information about whether they treat this information as confidential and would be foreseeably harmed by its disclosure. The record reflects that at least some of these Growers—those who sell to R.J. Reynolds, Universal Leaf, or CTINA—are bound by contract to treat those Buyers' identities as confidential. Those three tobacco companies have submitted declarations stating that their contracts with Growers contain nondisclosure agreements, requiring that the Grower keep the buyer-seller relationship confidential. *See* ECF 22 at 104–05 ¶ 31; *id.* at 109 ¶ 7; *id.* at 115 ¶ 5. But regardless, the agency is not entitled to summary judgment as to these Growers because, once again, it stumbles at the foreseeable harm hurdle. As the Court explained *supra*, the Torres Declaration is insufficient to establish reasonably foreseeable harm, and the agency points to no other evidence to establish that the Growers (rather than the Buyers) would be harmed by disclosure.

Unlike the R.J. Reynolds, Universal Leaf, and CTINA declarations, the declaration provided by Alliance One says nothing about confidentiality agreements with Growers. *See* ECF 22 at 112–13. Because the Alliance One declaration speaks only to how Alliance One treats this information, not how Growers treat this information, there is no evidence that Growers treat their relationship with Alliance One as confidential. *See id.* And again, for the same reasons stated above, there is no record evidence indicating that Growers who contract with Alliance One would be foreseeably harmed by disclosure.

\* \* \*

Looking only to whether Growers treat this information as confidential and would be foreseeably harmed by its disclosure, the agency has not justified its Exemption 4 withholdings. DOL has adduced no non-hearsay evidence demonstrating that the eight Growers who objected to

disclosure via letter treat their Buyers' identities as confidential. Although five Growers filed declarations averring that they treat this information as confidential, and the record reflects that Growers who contract with R.J. Reynolds, Universal Leaf, and CTINA are bound by contract to treat those Buyers' identities as confidential, there is no competent record evidence to establish that those Growers would be foreseeably harmed if the information were disclosed. And the record contains no information at all about whether Growers who contract with Alliance One treat this information as confidential or would be harmed by its disclosure.

### B. DOL's Second Theory

That brings us to DOL's second, alternative theory of the case. DOL urges the Court to consider whether the *Buyers* treat this information as confidential and would be foreseeably harmed by its release. *See* ECF 25 at 18–19. The agency has submitted declarations from each of the four Buyers—R.J. Reynolds, Universal Leaf, CTINA, and Alliance One—stating that the company treats their Growers' identities as confidential and would be harmed if that information were released. *See* ECF 22 at 97–115. FLOC counters that, in determining whether information is "confidential" for Exemption 4 purposes, courts should look only to how the party who submitted that information to the government (here, the Grower) treats it. *See* ECF 23 at 16–17. Although the Parties raise this issue, it receives limited airtime in their briefs.

This may be a question of first impression that could have ramifications beyond this case and would benefit from more fulsome briefing. The Court therefore finds it appropriate to deny each Party's motion for summary judgment without prejudice and allow the Parties—after meeting and conferring—the opportunity to file renewed motions that address this question.

In the meantime, however, FLOC has identified one piece of information that is in the public domain and must be disclosed. The Court takes up that issue below.

### C. Public Domain

FLOC has identified one piece of information that is already in the public domain—the fact that Strickland Farms sold tobacco to Alliance One during the relevant time period. *See* ECF 23 at 20. If the agency has withheld that information, it must disclose it to FLOC.

Under the public-domain doctrine, "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *CREW*, 58 F.4th at 1271 (quoting *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999)). "Prior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure." *Id.* (quoting *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007)). FLOC points out that, in response to a different FOIA request, DOL disclosed a narrative report stating that one of the farmers at issue in this case, Strickland Farms, sold tobacco to Alliance One in 2016. *See* ECF 23-1 at 116–17. That information is now in the public domain by virtue of the government's official disclosure. *See Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001) ("[A] disclosure made to any FOIA requester is effectively a disclosure to the world at large."). But here, DOL has redacted the names of companies who bought tobacco from Strickland Farms in 2016. *See* ECF 23-6 at 32, 41, 45 (FOIA production, redacting names of buyers pursuant to Exemption 4). The Court will therefore grant FLOC's motion for summary judgment (and deny DOL's motion for summary judgment) as to any record that redacts, pursuant to Exemption 4, the fact that Strickland Farms sold tobacco to Alliance One in 2016. If DOL withheld that information, it must disclose it.[6]

---

[6] FLOC also points to documents in the public domain demonstrating that Anderson Farms and J.B. Rose sold tobacco to R.J. Reynolds. *See* ECF 23-1 at 118 (prior FOIA production stating that Anderson Farms sold tobacco to R.J. Reynolds during the relevant time period); *id.* at 4–5 ¶ 16; https://perma.cc/7NVD-AERU (R.J. Reynolds brochure naming J.B. Rose as one of its "Most Valuable Partners" and identifying it as a supplier). But Anderson Farms and J.B. Rose do not appear to be among the farmers whose narrative reports are at issue in this case, so there is no occasion for the Court to order any disclosure under the public domain doctrine.

\* \* \*

For the foregoing reasons, the Court **GRANTS IN PART** FLOC's cross-motion for summary judgment, ECF 23, and **DENIES IN PART** DOL's cross-motion for summary judgment, ECF 22, as to any record that redacts, pursuant to Exemption 4, the fact that Strickland Farms sold tobacco to Alliance One in 2016. The Court **otherwise DENIES WITHOUT PREJUDICE** DOL's motion for summary judgment, ECF 22, and FLOC's cross-motion for summary judgment, ECF 23. The Court will issue a separate order directing the parties to meet and confer and providing an opportunity for renewed briefing as to DOL's second theory.

**SO ORDERED.**

                                                                                 _____
                                                                                 JIA M. COBB
                                                                                 United States District Judge

Date: July 28, 2025